# Beale *against* Patterson.

If the " summit of a mountain" be by law made the division line between counties, and the mountain be not continuous, but breaks off and the ends pass each other, forming an intervening valley between them, upon the one side of which the mountain is gradually sinking and terminating, and on the other it is commencing and rising; a line from one to the other at or about the place where the respective mountains acquire an equal height is the legal dividing line: and no common usage or assent of the authorities of the two counties, would alter this so as to affect a title to land older than the usage itself.

ERROR to the Common Pleas of *Perry* county.

This was an action of trespass *quare clausum fregit*, by Jesse Beale against John Patterson.

The plaintiff gave in evidence a warrant to Jesse Beale for 100 acres of land in Madison township, Perry county, dated the 8th of February 1838, and a survey made the 31st of December 1838, of 110 acres duly returned.

The defendant admitted the cutting of timber, and gave in evidence a warrant to George Hacket for 400 acres of land in Mifflin county, dated the 1st of February 1794; a survey and return the 18th of August 1794, embracing the *locus in quo*, and a regular treasurer's sale of the land in Mifflin county, and that title by divers conveyances vested in him.

By an Act of Assembly passed in 1834, there were three com-

missioners appointed to run and mark the division line between the counties of Perry and Juniata (formerly Mifflin). They did run and mark the line by which the land in controversy was placed in Perry county. It appeared by the Act of Assembly dividing off Mifflin county, that the " summit of the Tuscarora mountain" was made the line of division. The evidence showed that at the point where this land was, the mountain was not continuous, but broke off and the ends passed each other. The question arose, where was the true line? The plaintiff derived his title to the land as being in Perry county, and the defendant his as being in Mifflin county; and as it was in one or the other, so were the parties' rights to recover in this action.

One of the commissioners was examined as a witness, and testified that the line they had run and marked, he believed, was not the true one; that if a line was run from the summit of one mountain to that of the other, where they were of equal height, it would place the land in controversy in *Mifflin* county. The plaintiff called several witnesses to prove the usage on the subject of the line, as practised in making roads, paying taxes, voting, &c. which would place the land in *Perry* county: the proof on this subject went as far back as 30 years.

HEPBURN, President, thus instructed the jury:

The court instruct you, as matter of law, that when the mountains pass each other as in this case, forming an intervening valley between the two, upon the one side of which the mountain is gradually sinking and terminating, and upon the other the mountain commencing and rising, a line from the one to the other at about the place where they acquire an equal height, would be the legal dividing line between the two counties. Any lands, therefore, on the north-east side of that line, would be in Mifflin county, at the date of this sale for taxes.

This construction of the Act dividing the two counties, by the court, it is admitted, throws the land in dispute into then Mifflin, now Juniata county; and the sale being regular for taxes, and that title vested in the defendant, protects him against the plaintiff's claim for damages in this suit; unless the circumstances detailed by Daniel Snyder and others, in relation to the marking of a tree by the commissioners appointed to run a state road in 1812 or 1814, &c. as stated by the different witnesses, will, in law, produce a different result. These, we think, are not sufficient to change the construction already given to the Act of Assembly dividing the two counties, nor to affect the rights of a purchaser of lands lying actually within the limits of the county, in accordance with this construction in which they were assessed and sold.

*Reed*, for plaintiff in error, referred to the Act dividing the counties, 2 *Smith's Laws* 493, and the Act appointing commissioners to run the line, *Pamph. Laws of* 1833–4, p. 404; and contended that

[Beale v. Patterson.]

the court erred in adopting the abstract, arbitrary rule fixing the division line; that if the line designated in the Act of Assembly as applicable to the true position of the Tuscarora Mountain, and its broken summits, was indefinite and uncertain, the court should have charged the jury that it might be fixed by common usage, and by the assent of the authorities of the two counties; and that it was a fact to be decided by the jury, from the evidence, whether such line had been so fixed, acknowledged and continued from 1814 up; and if so, the line so acknowledged and designated on the ground, would be the legal line between the counties.

*Watts*, for defendant in error, argued that the principle adopted by the court was the true one; that if the land was originally in the county of Mifflin, no subsequent usage or practice could affect the title of the warrantee.

The opinion of the Court was delivered by

Rogers, J.—When dividing the counties of Mifflin and Cumberland, the Legislature must have been under the impression that the Tuscarora was a continued and uninterrupted range of mountains; and for this reason it was supposed to be a sufficiently certain designation of boundaries to divide them by a line running along the summit of the mountain, from a given point, to the Franklin county line. In this, it seems, they were mistaken; and hence, to ascertain the division, some rule must be adopted; and we think the court has hit upon the true one. When the mountains pass each other, forming an intervening valley between the two, upon the one side of which the mountain is gradually sinking and terminaing, and on the other the mountain is commencing and rising, a line from one to the other at or about the place where the respective mountains acquire an equal height, is the legal dividing line. As that is the case here, had the line between the counties of Mifflin and Cumberland been actually run, the commissioners would have been bound to conform to that rule; and that must be considered as done which ought to have been done. But as this was omitted, the same uncertainty exists as to the whole line as well as to this part of it, and the summit of the mountain, as this ideal or legal line, is only certain as it may be reduced to a certainty; *id est certum quod certum reddi potest.* As, then, in some respects, it may be viewed as indefinite and uncertain, the dividing line may be controlled by common usage, and by the assent of the authorities of the two counties. But this would require clear and explicit proof of an uninterrupted usage and consent, and can only be justified on the maxim, *communis error facit jus.* But, unhappily for the argument, there is no such evidence. The Act dividing the counties was passed in 1789, and the warrant, which is the foundation of the defendant's title, was laid, and the survey made, in 1794, and at that time there was no

[Beale v. Patterson.]

usage whatever, which can in any way affect or alter the legal construction of the Act. The land *then,* without doubt, was within the limits of the county of Mifflin. The testimony of Snyder is vague and indefinite. The commissioners, of whom he speaks, were employed to lay out a road, and not to ascertain and fix the boundary line of the counties; and whatever may have been their impression, it can produce no effect whatever. The line remains as before, on the construction of the original Act. It seems that in 1834 the line between the counties of Perry and Juniata was run by commissioners, one of whom was examined as a witness, and acknowledges that the location, as fixed on by them, is not the true boundary. It would be unjust that a person who deduces his title from the original warrantee, whose title certainly was good, should be deprived of his property by a survey which is evidently founded in mistake. And this could only be on the ground that this survey is conclusive, which it is not. The land in dispute was surveyed in 1794, as land lying within the limits of Mifflin county. In 1821 and 1822, it was taxed, and sold for taxes, and purchased by the defendant as such, and has since been taxed as lying within that county. Nay more; it appears that the plaintiff was aware of this, and that he obtained his warrant not until 1838, on the erroneous supposition that the commissioners, having undertaken to alter the county lines, the right of the original owner was destroyed. But it is absurd to maintain that the mistake of the commissioners can affect vested rights. It would be only to prevent this injustice that common usage would be allowed to change the line fixed by the Act of 1789. It may be allowed to *sustain* titles, but it would be intolerable to allow evidence of usage to *destroy* titles.

Judgment affirmed.